

# Missouri Court of Appeals

## Southern District

In Division

COURTNEY GARNER, )
)
    Respondent, ) No. SD37632
)
v. ) **Filed: May 1, 2023**
)
AMCO INSURANCE COMPANY, )
)
    Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF LAWRENCE COUNTY

Honorable Matthew Kasper, Judge

**REVERSED AND REMANDED WITH INSTRUCTIONS**

Appellant AMCO Insurance Company ("AMCO") appeals the trial court's grant of summary judgment in favor of Respondent Courtney Garner ("Garner") on Garner's claim seeking compensatory damages under an underinsured motorist ("UIM") policy issued by AMCO ("AMCO Policy"). Because the vehicle that caused the accident was not an "underinsured motor vehicle" under the AMCO Policy, we reverse and remand.[1]

---

[1] "The purpose of underinsured motorist coverage is to provide insurance coverage for insureds who have been bodily injured by a negligent motorist whose own automobile liability insurance coverage is insufficient to pay for the injured person's actual damages." ***Wasson v. Shelter Mut. Ins. Co.***, 358 S.W.3d 113, 117 (Mo. App. W.D. 2011).

## Background

## The Undisputed Material Facts

Garner's son and a passenger were killed when the driver of a Silverado ("the Silverado") collided with a vehicle driven by Garner's son ("the Accident"). At the time of the Accident, the Silverado owner was insured under an automobile policy by Automobile Club Inter-Insurance Exchange ("AAA") with a total bodily injury liability limit of $500,000 ("the AAA Policy"). The parents of the two people killed sued the Silverado owner. The parties settled and AAA paid its $500,000 liability limit ($250,000 to each set of parents).

At the time of the Accident, Garner had an automobile insurance policy through AMCO which contained a provision for UIM coverage. The AMCO Policy's declarations stated UIM bodily injury limits of $50,000 "Each Person" and $100,000 "Each Occurrence."[2] The AMCO Policy provided, in relevant part:

### UNDERINSURED MOTORISTS COVERAGE - MISSOURI

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

### INSURING AGREEMENT

**A.** We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury":
1. Sustained by an "insured"; and
2. Caused by an accident.
The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle".
. . . .

**C.** "Underinsured motor vehicle" means a land motor vehicle or "trailer" of any type to which a bodily injury liability bond or policy applies at

---

[2] The AMCO Policy's declarations provide a medical payments coverage limit of $1,000 "Each Person."

2

the time of the accident *but its limit for bodily injury liability is less than the limit of liability for this coverage.*

. . . .

**LIMIT OF LIABILITY**

**A.** The Limit of Liability stated in the Declarations for Underinsured Motorist Coverage is for reference purposes only. Under no circumstances do we have a duty to pay you or any person entitled to Underinsured Motorists Coverage under this policy the entire Limits of Liability stated in the Declarations for this coverage. We will pay the difference between the Limit of Liability for this coverage and the reduction in coverages set in **INSURING AGREEMENT A.1.** and **A.2.** for "bodily injury" resulting from any one accident. This is the most we will pay regardless of the number of:

  **1.** "Insureds";
  **2.** Claims made;
  **3.** Vehicles or premiums shown in the Declarations; or
  **4.** Vehicles involved in the accident.
 **B.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part **A**, Part **B** or Part **C** of this policy.

The "total damages" for Garner's son's wrongful death exceeded the AMCO Policy's UIM "Each Person" limit of $50,000 and Garner made a claim under the AMCO Policy's UIM coverage. AMCO denied the claim on the grounds the Silverado was not an "underinsured motor vehicle" under the policy.

## Procedural Background

Garner sued AMCO for a contract claim for UIM benefits under the AMCO Policy.[3] Both parties moved for summary judgment based on the above facts. Garner's motion for summary judgment focused on the amount of UIM coverage rather than whether the Silverado was an underinsured motor vehicle. AMCO's motion for summary judgment argued Garner's claim failed because the Silverado did not qualify as an "underinsured motor vehicle."

---

[3] Garner initially included a claim for a vexatious refusal to pay, but voluntarily dismissed it.

The trial court denied AMCO's motion for summary judgment and sustained Garner's motion for summary judgment. The trial court found Garner was entitled to underinsured motorist coverage under the AMCO policy. AMCO appeals from that judgment in four points.

In points 1 and 4, AMCO argues the trial court erred in sustaining Garner's motion for summary judgment (point 1) and in denying AMCO's motion for summary judgment (point 4) because UIM coverage was not triggered under the AMCO Policy, in that the "Silverado is not an 'underinsured motor vehicle' under the AMCO [P]olicy's definition."[4] Because points 1 and 4 are dispositive of points 2 and 3, we do not address points 2 and 3.[5] Since points 1 and 4 rely on the same facts and principles of law, we address these points together.

---

[4] Garner's points relied on are written in all capital letters. When quoting such, this Opinion reverts to conventional capitalization for ease of readability.

[5] In point 2, AMCO argues the trial court erred in sustaining Garner's motion for summary judgment, "because § 379.204 does not apply, in that the Silverado is not an 'underinsured motor vehicle' under the statute." In point 3, AMCO argues the trial court erred in sustaining Garner's motion for summary judgment "because § 379.204 does not apply, in that the AMCO Policy's UIM limit is not less than $50,000." In its order granting summary judgment in favor of Garner, the trial court found section 379.204 was applicable and controlling because the Silverado qualified as an underinsured motor vehicle in that the liability coverage was insufficient to cover all of Garner's damages and the limits of liability for UIM coverage under the AMCO Policy were less than two times the limits for bodily injury or death under section 303.020. While we find points 1 and 4 dispositive of points 2 and 3, we agree with AMCO that section 379.204 is inapplicable in this case. Section 379.204 was passed "to help protect the UIM coverage purchaser from buying 'illusory' UIM coverage." Hon. David Noce, 30 **Mo. Prac.**, Insurance Law & Practice § 11:1 (2d ed. 2022). This section "provides that UIM coverage with a limit less than $50,000 must 'be construed to provide coverage in excess of the liability coverage of any underinsured motor vehicle involved in the accident.'" *Id.* (quoting *Miller v. Ho Kun Yun*, 400 S.W.3d 779, 791 n.8 (Mo. App. W.D. 2013)). However, section 379.204 does not define an underinsured motor vehicle or specify when the terms of a policy's underinsured motorist coverage will be triggered. *Kirkendoll v. Auto-Owners Ins. Co.*, 658 S.W.3d 158, 166 (Mo. App. W.D. 2022).

> *Those* issues are governed by the terms of the insurance policy, and in *this case*, those contractual terms defeat [Garner's] claim for coverage. Section 379.204, RSMo specifies only how amounts which are *otherwise payable* under a policy's underinsured motorist coverage relate to payments received from the negligent driver; it does not specify <u>when</u> such underinsured motorist payments are legally due.

4

## Standard of Review and Applicable Legal Principles

Our review of the trial court's decision to grant summary judgment is *de novo*. ***Green v. Fotoohighiam***, 606 S.W.3d 113, 115 (Mo. banc 2020). "Our *de novo* standard of review means that we look at the summary judgment issues presented on appeal as the trial court should have initially under Rule 74.04, and we give no deference to the trial court's ruling." ***Great Southern Bank v. Blue Chalk Constr., LLC***, 497 S.W.3d 825, 834 (Mo. App. S.D. 2016). Summary judgment "shall be entered if 'there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.'" ***State ex rel. Koster v. Olive***, 282 S.W.3d 842, 846 (Mo. banc 2009) (citing Rule 74.04(c)(6) Missouri Court Rules (2022)). "When the underlying facts are undisputed, controversies regarding the interpretation and application of insurance contracts are matters of law." ***Lawson v. Progressive Cas. Ins. Co.***, 527 S.W.3d 198, 201 (Mo. App. E.D. 2017).

## Discussion

AMCO argues the trial court erred in granting Garner's motion for summary judgment and denying AMCO's motion for summary judgment because the Silverado is not an underinsured motor vehicle under the AMCO Policy. In response, Garner argues the AMCO Policy is ambiguous.[6] We begin by considering whether there is any

***Id.*** In our case, the AMCO Policy's UIM limit was not less than $50,000, so the statute does not apply. Nor is the Silverado an "underinsured motor vehicle" under the statute since the definition of an "underinsured motor vehicle" is determined by the AMCO Policy.

[6] In her motion for summary judgment and suggestions in support, Garner never claimed that the policy was ambiguous as to when underinsured motorist coverage applies. Rather, she argued it was ambiguous only as to the UIM liability limits (i.e., the amounts) and that section 379.204 applied. Nor did Garner file suggestions making the argument she now makes in opposition to AMCO's motion for summary judgment.

5

ambiguity as to when AMCO's UIM coverage applies, which requires us to interpret the AMCO Policy.

Whether underinsured motorist coverage exists is determined by the contract entered between the insured and the insurer. *Kirkendoll*, 658 S.W.3d at 166. We interpret insurance contracts by applying the general rules of contract interpretation.[7] *Miller*, 400 S.W.3d at 784. If an insurance policy is unambiguous, it must be enforced according to its terms. *Lawson*, 527 S.W.3d at 201. "If, however, policy language is ambiguous, it must be construed against the insurer." *Kirkendoll*, 658 S.W.3d at 160. In construing an insurance policy, we give words the meaning which would be attached by an ordinary person of average understanding if purchasing insurance. *Lawson*, 527 S.W.3d at 201. An insurance policy is ambiguous if "there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy." *Swadley v. Shelter Mut. Ins. Co.*, 513 S.W.3d 355, 357 (Mo. banc 2017) (quoting *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007)). Words or phrases in an insurance contract must be interpreted by this Court in the context of the policy as a whole and are not to be considered in isolation. *Miller*, 400 S.W.3d at 784. "Definitions, exclusions, conditions and endorsements are necessary provisions in insurance policies. If they are clear and unambiguous within the context of the policy as a whole, they are enforceable." *Kirkendoll*, 658 S.W.3d at 160 (quoting *Todd v. Mo. United School Ins. Council*, 223 S.W.3d 156, 163 (Mo. banc 2007)).

Our analysis in this case is guided by two cases from the Supreme Court of Missouri, *Rodriguez v. General Acc. Ins. Co. of Am.*, 808 S.W.2d 379 (Mo. banc

[7] Missouri does not require that drivers obtain UIM coverage. *Miller*, 400 S.W.3d at 784.

6

1991), and ***Swadley***, 513 S.W.3d at 358.  In both of these cases, our supreme court found identical or nearly identical definitions of "underinsured motor vehicle" to be clear and unambiguous.

In ***Rodriguez***, our supreme court analyzed whether underinsured motorist coverage was triggered where the policy contained a definition of an "underinsured motor vehicle" which was identical to the definition in our case.  808 S.W.2d at 379.  Under the policy in ***Rodriguez***, "'[u]nderinsured motor vehicle' meant a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage." ***Id.*** at 381.  In affirming the trial court's grant of summary judgment, our supreme court reasoned:

> The contract between [insurer] and the [appellants] clearly states that an underinsured motor vehicle is a vehicle whose limits for bodily injury liability are "less than the limit of liability for this coverage."  By their own admission, the [appellants] acknowledge that [the tortfeasor's] liability insurance coverage was $50,000.  Since [the tortfeasor's] coverage is equal to the limit of liability under the [appellants'] policy, [the tortfeasor] was not an underinsured motorist as defined by the [appellants'] policy.
> . . . .
>
> Considering the clarity with which the underinsured motorist coverage is defined in the policy, we hold that it is neither ambiguous nor misleading.

***Id.*** at 382-83.

***Swadley*** analyzed a nearly identical definition of "underinsured motor vehicle." 513 S.W.3d at 358.  In that case, the policy defined "underinsured motor vehicle" as "a motor vehicle covered by a liability bond, governmental liability statute, or insurance policy, applicable to the occurrence; **but the monetary limits of that bond, statutory coverage, or policy, are less than the limits of underinsured motorists coverage shown in the Declarations**." ***Id.*** at 356.  Because this

7

definition was clear and unambiguous within the context of the policy as a whole, UIM coverage unambiguously did not apply when the underinsured motorist had liability coverage equal to or greater than the limit stated in the declarations. *Id.* at 358.

We also find the policy definition of UIM coverage contained in the AMCO Policy is not ambiguous nor misleading. The definition of "underinsured motor vehicle"—and thus, when the AMCO Policy's UIM coverage applies—is clear and unambiguous within the context of the policy as a whole. The AMCO Policy defines "underinsured motor vehicle" as "a land motor vehicle or 'trailer' of any type to which a bodily injury liability bond or policy applies at the time of the accident *but its limit for bodily injury liability is less than the limit of liability for this coverage."* (emphasis added*).* The declarations state the limit of liability under the AMCO Policy for UIM bodily injury is $50,000 for each person. Since the driver of the Silverado had a policy with a bodily injury liability limit of $500,000, an amount greater than the UIM $50,000 bodily injury limit of liability under the AMCO Policy, the Silverado was not an "underinsured motor vehicle" under the AMCO Policy.[8] The trial court erred in granting Garner's motion for summary

---

[8] However, "even if the definition of underinsured motor vehicle seems to preclude a claim in the facts of a particular case, we must still seek to determine whether other provisions of the endorsement, when read together with the definition, demonstrates the existence of an ambiguity." *Miller*, 400 S.W.3d at 785. One case where such an ambiguity was found was *Seeck*. In *Seeck*, our supreme court found an ambiguity in the policy based on an "excess" insurance clause despite the policy clearly defining "underinsured motor vehicle." 212 S.W.3d at 132-33. That "excess" insurance clause provided:

> When an insured is occupying a motor vehicle not owned by the insured . . . this insurance is excess over any other insurance available to the insured and the insurance which applies to the occupied motor vehicle is primary.

*Id.* at 132. In our case, neither party claims that the policy at issue contained a similar "excess" insurance clause, although Garner characterizes the AMCO Policy's Limit of Liability section as providing for excess coverage. The AMCO Policy's Limit of Liability section does not contain any language similar to the language analyzed in *Seeck*. Because there is no issue of an "excess" insurance clause like *Seeck* in our case, *Rodriguez* and *Swadley* apply here.

judgment and denying AMCO's motion for summary judgment. Points 1 and 4 are granted.

## Conclusion

The trial court's judgment is reversed and remanded with instructions to enter summary judgment in favor of AMCO.

MARY W. SHEFFIELD, J. – OPINION AUTHOR

JACK A. L. GOODMAN, C.J. – CONCURS

JENNIFER R. GROWCOCK, J. – CONCURS